IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **KENNETH O. MORGAN,** | * | |
| | * | |
| Plaintiff | * | |
| v. | * | Civil Case No. SAG-20-0427 |
| | * | |
| **COPPIN STATE UNIVERSITY,** *et al.*, | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Kenneth O. Morgan ("Morgan") filed a Second Amended Complaint against his former employer, Coppin State University ("Coppin State"), alleging that he was deprived of an adjunct teaching position in retaliation for his prior complaints of age-based discrimination. ECF 37. Discovery has now concluded, and Coppin State has filed a motion for summary judgment, ECF 48, to which Dr. Morgan filed an opposition, ECF 58, and Coppin State filed a reply, ECF 59. After that motion was fully briefed, Dr. Morgan filed a "Motion for Leave to File Third Amended Complaint," ECF 60, which seeks to add new causes of action and an additional party. Coppin State filed an opposition, ECF 61, and Dr. Morgan filed a reply, ECF 62. I have reviewed both motions and the related filings and exhibits. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons stated herein, Coppin State's motion will be granted and Dr. Morgan's motion will be denied.

I.   **FACTUAL BACKGROUND**

Dr. Morgan, whose degrees include a doctorate in education, became an Assistant Professor/Coordinator of Urban Studies at Coppin State. ECF 37 ¶ 4; ECF 48-3. After filing an employment discrimination claim charging age discrimination, Dr. Morgan entered a Settlement

1

Agreement and Release with Coppin State in March of 2016.  ECF 48-5.  Under that agreement, if Dr. Morgan did not obtain full tenure, "the last date of his employment with the University shall be June 20, 2017 with no further consideration for tenure."  *Id.* at 2.  Coppin State informed Dr. Morgan on March 31, 2017 that he was being denied tenure because his application failed to demonstrate that he met the requirements.  ECF 48-6.

After his tenure-track employment was terminated, Dr. Morgan applied for a position of Adjunct Professor to teach a class in interdisciplinary studies at Coppin State.  ECF 48-7 at 115:12-16.  At least two Coppin State employees, Dean Beverly J. O'Bryant and Dr. Klugh, encouraged him to apply for adjunct positions.  *Id.* at 117-18.  On July 30, 2017, Dean O'Bryant, as Dean of the College of Behavioral and Social Studies, approved Dr. Morgan for an adjunct position, with the understanding that the course would begin on August 29, 2017.  ECF 37 ¶ 16.  On or about August 25, 2017, Dr. Morgan attempted to access the course syllabus online, but could not gain access.  *Id.* ¶ 17.  Upon investigation, the Interdisciplinary Studies program director advised Dr. Morgan that Human Resources ("HR") had told her that he was not allowed to teach the course.  *Id.* ¶ 18.  On August 29, 2017, Dr. Lisa Horne Early from HR told Morgan that he was "not eligible for reemployment with the University as an adjunct.  The practice has been in effect for three years."  ECF 48-17.  The alleged practice of declining to hire adjuncts who had failed to obtain tenure as Assistant Professors was not known to Dr. Morgan from his prior employment and was not known to Dean O'Bryant or others in her department.  ECF 37 ¶¶ 21, 22.  Dr. Morgan claims, therefore, that his adjunct offer was revoked in retaliation for his earlier age discrimination complaint.

## II. MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

### A. Legal Standard

Federal Rule of Civil Procedure 15 provides that a party seeking to amend its pleading after twenty-one days following service may do so "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). However, the Rule requires courts to "freely give leave when justice so requires." *Id.* The Fourth Circuit's policy is "to liberally allow amendment." *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010). Accordingly, leave to amend should be denied only if "prejudice, bad faith, or futility" is present. *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509-10 (4th Cir. 1986) (interpreting *Foman v. Davis*, 371 U.S. 178 (1962)); *Hart v. Hanover Cnty. Sch. Bd.*, 495 F. App'x 314, 315 (4th Cir. 2012). Ultimately, the decision to grant leave to amend rests in this Court's discretion. *Foman*, 371 U.S. at 182; *Laber v. Harvey*, 438 F.3d 404, 428 (4th Cir. 2006) (en banc).

However, because Dr. Morgan is seeking leave to amend after the close of discovery and well after the deadline for amendment provided by the scheduling order, the liberal Rule 15 standard must be weighed against the requirements of Federal Rule of Civil Procedure 16(b)(4), which reads, "A schedule may be modified only for good cause and with the judge's consent."

### B. Analysis

Coppin State argues that Dr. Morgan's motion for leave to amend should be denied for three independent reasons. ECF 61. First, Dr. Morgan failed to comply with Local Rule 103(6)(c)(1) and his "motion" essentially consisted of his proposed amended complaint, without providing any reason or explanation for its belated filing. Second, the motion for leave to amend was filed approximately seven months after the deadline for joinder of additional parties or amendment to the pleadings, and after summary judgment briefing has been completed. Third,

the proposed amendments are futile, prejudicial, and filed in bad faith. This Court agrees with Coppin State on all three points.

Beginning with the first cited reason, Dr. Morgan did not properly file his motion for leave to file an amended complaint in accordance with the Local Rules, which require a separate motion and a redlined version comparing the two complaints, and did not provide any justification or good cause for his filing. On this ground, alone, courts in this District have denied tardy motions for leave to amend. *See Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 632 (D. Md. 2003) (no reason provided other than counsel having "overlooked" the deadline); *Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 374 (D. Md. 2002) (plaintiff wholly failed to provide "explanations, reasons, or further information regarding the lateness of the motion . . ."). While, in other circumstances, this Court might have allowed Dr. Morgan second chance to comport the filing with the relevant requirements, for the reasons described below, such efforts would be futile.

The second reason cited by Coppin State is determinative. The operative scheduling order in this case provided a March 15, 2021 deadline for the joinder of additional parties or the amendment of pleadings. ECF 40. Dr. Morgan did not file the instant motion for leave to amend until seven months later, on October 13, 2021. ECF 60. As such, Dr. Morgan must satisfy the good cause standard set forth in Rule 16(b)(4), before this Court will find leave to amend under Rule 15 to be appropriate.

Other cases have described a similar tension between these two federal rules. In *Nourison Rug Corp. v. Parvizian*, like in the instant case, a party sought amendment of its pleading after the expiration of the deadline in the scheduling order. 535 F.3d 295, 297 (4th Cir. 2008). The Fourth Circuit noted that, "[g]iven their heavy case loads, district courts require the effective case management tools provided by Rule 16." *Id.* at 298. Accordingly, the Fourth Circuit explained

that the party seeking to modify the scheduling order must meet the good cause requirement of Rule 16(b)(4), before the court would consider the more liberal standard for amendment of a pleading in Rule 15(a)(2).  *Id.*; *see also Cook v. Howard*, 484 Fed. App'x. 805, 814-15 (4th Cir. 2012) ("[U]nder Rule 16(b)(4), a party must first demonstrate 'good cause' to modify the scheduling order deadlines, before also satisfying the Rule 15(a)(2) standard for amendment.").

To establish good cause, the party seeking to amend the scheduling order must "show that the deadlines cannot reasonably be met despite the party's diligence,' and whatever other factors are also considered, 'the good-cause standard will not be satisfied if the [district] court concludes that the party seeking relief (or that party's attorney) has not acted diligently in compliance with the schedule.'"  *Cook*, 484 F. App'x at 815 (quoting 6A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* § 1522.2 (3d ed. 2010)); *see also Rassoull*, 209 F.R.D. at 374 ("The primary consideration of the Rule 16(b) 'good cause' standard is the diligence of the movant.  Lack of diligence and carelessness are 'hallmarks of failure to meet the good cause standard.' . . . 'If [the moving] party was not diligent, the inquiry should end.'" (citations and emphasis omitted)); *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 375 (D. Md. 1999) ("Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts.  Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." (internal citations and quotations omitted)).

Applying these standards, Dr. Morgan has failed to establish good cause for his tardy motion for leave to amend.  Even crediting his position that some of the evidence justifying amendment did not come into his possession until deposition of Dr. Lisa Early on June 4, 2021, almost four-and-one-half months elapsed between that deposition and the filing of his motion for leave to amend.  In that interim period, the parties fully completed briefing on Coppin State's

5

summary judgment motion. There is simply no reason Dr. Morgan could not have acted with greater diligence to seek leave to amend in the weeks immediately following Dr. Early's deposition. More importantly, Dr. Morgan's proposed Third Amended Complaint does not merely seek to add Dr. Early as a defendant, but it seeks to add a new count for a First Amendment violation. Plaintiff does not allege that this new legal theory somehow turns on information he acquired after the original amendment deadline. Ultimately, Dr. Morgan simply failed to act with the requisite diligence in naming Dr. Early as a defendant and in adding the proposed First Amendment claim. *See Kantsevoy v. LumenR LLC*, 301 F. Supp. 3d 577, 590 (D. Md. 2018) (finding that the defendant's argument that it "had not previously 'appreciated' its potential counterclaim, despite having knowledge of the document that purportedly gave rise to it, does not support its claim of diligence," especially where that appreciation came about five months prior to the amendment deadline); *CBX Techs., Inc. v. GCC Techs., LLC*, 2012 WL 3038639, at *4 (D. Md. July 24, 2012) ("[Plaintiff] has not offered any facts that would support an amended complaint and that were not discoverable by [plaintiff] through proper diligence prior to the deadline of the original scheduling order for filing a motion for leave to amend the complaint."); *Crouch v. City of Hyattsville*, 2012 WL 718849, at *2-4 (D. Md. Mar. 5, 2012) (finding no good cause where the plaintiff had notice of sufficient facts to plead his *Monell* claim since the outset of the litigation, despite the fact that those facts may not be enough to prove the claim, because Rule 8 does not require such stringent evidentiary proof at the pleading stage).

Accordingly, under these circumstances, this Court finds that Dr. Morgan has demonstrated no good cause for filing his motion for leave to amend the complaint after the deadline provided in the Scheduling Order, or at least more than four months after his discovery of new facts. And where a moving party fails to demonstrate good cause under Rule 16(b), the Court need not address

the remaining Rule 15(a) factors. *See, e.g.*, *Nourison Rug*, 535 F.3d at 299 (declining to address the Rule 15(a) factors after upholding the trial court's finding of no good cause under Rule 16(b)).

This Court alternatively notes, however, that if the Rule 15(a) factors were considered, there is no doubt that Coppin State could establish prejudice. "Perhaps the most important factor listed by the [Supreme] Court for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter a pleading." 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* (2004 & 2015 Supp.) ("Wright & Miller"), § 1487 at 701 (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971); *United States v. Hougham*, 364 U.S. 310 (1960)). The burden of showing prejudice falls on "[t]he party opposing amendment." *Atlantic Bulk Carrier Corp. v. Milan Exp. Co.*, 2010 WL 2929612, at *4 (E.D. Va. July 23, 2010). As the Fourth Circuit explained in *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 439 (4th Cir. 2011), "[w]hether an amendment is prejudicial will often be determined by the nature of the amendment and its timing . . . [T]he further the case progressed before judgment was entered, the more likely it is that the amendment will prejudice the defendant . . .'" (quoting *Laber*, 438 F.3d at 427) (alteration in *Laber*).

Prejudice can be found "where a proposed amendment raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party [and] . . . the amendment is offered shortly before or during trial." *Johnson*, 785 F.2d at 510 (citations omitted). In contrast, "[a]n amendment is not prejudicial . . . if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." *Laber*, 438 F.3d at 427. Thus, the court must examine the facts of each case "to determine if the threat of prejudice is sufficient to justify denying leave to amend." Wright & Miller, § 1487 at 701.

While Dr. Morgan correctly notes that no trial date is yet set, this case has progressed through the entirety of discovery to the point of fully briefed summary judgment motions. There is no question that the addition of Dr. Early as a defendant, rather than as a person with some involvement in the case, would require additional discovery into her actions. Additionally, at the very least, the parties would have to undertake new summary judgment briefing to address Dr. Morgan's First Amendment claim and Dr. Early's involvement, even if additional discovery proved unwarranted. It is clear, then, that Coppin State would suffer prejudice from the late-stage amendment, providing an independent basis to deny leave to amend even under the more lenient Rule 15 standard. Dr. Morgan's motion, then, will be denied.

## III.   SUMMARY JUDGMENT MOTION

### A. Legal Standard

Coppin State seeks summary judgment as to Dr. Morgan's claims in his Second Amended Complaint. Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad,* 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a "scintilla of evidence" in support of the non-moving party's position will be insufficient; there must be evidence on which

the jury could reasonably find in its favor.  *Id*. at 348 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)).  Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another."  *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case.  *Id.* at 352.  The non-moving party "must produce competent evidence on each element of [its] claim."  *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671).  If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial."  *Id.* at 352 (quoting *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)).  In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

B. Analysis

   1. Sovereign Immunity

Coppin State argues that sovereign immunity bars Dr. Morgan's retaliation claim, which is brought pursuant to the federal Age Discrimination in Employment Act ("ADEA").  Its argument is correct.  Sovereign immunity protection extends to state agencies, and Coppin State, as part of the University System of Maryland, enjoys such protection.  *See Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429-31 (1997); *Medsense, LLC v. University System of Maryland,* 420 F.Supp.3d 382, 391 (D. Md. 2019).  In the absence of abrogation of sovereign immunity or consent from Maryland, then, Morgan is prohibited from seeking injunctive or monetary relief from

Coppin State for violation of the ADEA. *See Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363-64 (2001).

It is well-established that sovereign immunity has not been abrogated for ADEA claims. *See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91 (2000). Further, Maryland has not waived its sovereign immunity as it pertains to federal statutory claims. *See* Md. Code Ann., State Gov't §§ 12-101–12-103 (Maryland Tort Claims Act "MCTA" including a limited waiver of sovereign immunity for state law torts and for contracts, but expressly excluding "any defense that is available under the 11th Amendment to the United States Constitution."); *Williams v. Morgan State University*, 2021 WL 3144890, at *4 (D. Md. July 26, 2021) ("This Court has confronted this issue on several other occasions and each time has similarly found that Maryland's waiver of sovereign immunity as to tort claims did not extend to claims arising under federal statutes."). Accordingly, sovereign immunity bars Plaintiff's federal ADEA claim. *See McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014) (sovereign immunity bars former employee's ADEA claims against Maryland state agencies). Further, the law is clear that because Coppin State would have enjoyed sovereign immunity from an ADEA claim in state court as well, its removal of this litigation to federal court did not waive the defense. *See Stewart v. North Carolina*, 393 F.3d 484, 488-91 (4th Cir. 2005). Summary judgment, then, must be granted for Coppin State.

### 2. Retaliation/Causal Link

Coppin State correctly notes that Dr. Morgan's Second Amended Complaint alleges federal ADEA retaliation claims only and does not reference the state law corollary prohibiting age-based discrimination. Even had it done so, while sovereign immunity would not be at issue, his retaliation claim would still fail. Dr. Morgan has simply adduced insufficient evidence, at the summary judgment stage, to create a genuine issue of material fact as to whether retaliation animated the revocation of his adjunct offer. *See Perkins v. Intern. Paper Co.*, 936 F.3d 196, 213

(4th Cir. 2019) (requiring a causal connection between plaintiff's protected conduct and the materially adverse action taken against plaintiff by his employer).

Causation typically rests, at least in part, on temporal proximity between the protected activity and the adverse action. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005) ("There must also be some degree of temporal proximity to suggest a causal connection."). No such temporal proximity exists here. Dr. Morgan signed the Settlement Agreement and Release of his 2016 EEOC claim in March of 2016, and Coppin State's decision to revoke his adjunct offer occurred almost eighteen months later, in August, 2017. In the meantime, Dr. Morgan served the remainder of his term as Assistant Professor at Coppin State, without major incident or discipline.[1] Had Coppin State intended to retaliate against Dr. Morgan for his EEOC claim, it could have done so at a much earlier date. *See id.* ("A lengthy time lapse between the [public official's] becoming aware of the protected activity and the alleged adverse . . . action . . . negates any inference that a causal connection exists between the two." (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir.1998))). Dr. Morgan's suggestion that the end of his contract was the "first convenient opportunity" to retaliate against him is facially implausible, as employers possess a wide range of actions in their arsenal to deploy against employees who have committed some perceived transgression.

Despite the lack of traditional indicia of any causal connection, Dr. Morgan's retaliation claim survived Coppin State's motion to dismiss because his complaint plausibly alleged a ruse: that Coppin State had falsely asserted the existence of a policy against hiring persons who had

---

[1] Dr. Morgan's vague assertions that after his EEOC complaint, he sometimes did not receive emails when he believes the date or time of regular departmental meetings were changed, ECF 58-1 at 8, and that he received less help from colleagues with his tenure application, *id.*, are unspecific in nature and do not rise to the level of adverse actions such that they could suggest or substantiate retaliation.

11

been denied tenure to serve as adjuncts. With a fuller evidentiary record now in place, the evidence simply does not create a genuine issue of material fact on that issue. When the department first informed Dr. Early in HR of its plan to hire Dr. Morgan as an adjunct, she informed the department that he was ineligible because the hire violated the institution's existing practice, which had been in place for three years. ECF 48-8 at 829-30; ECF 48-11 at No. 20. Other individuals were disqualified from employment, or had their appointments rescinded, because of the same practice. ECF 48-8 at 22-24. The mere fact that some individuals, including Dr. Morgan and Dean O'Bryant, may have been previously unaware of the three-year-old practice does not suggest that the practice was falsified, given their lack of direct involvement in the regular hiring process and the relative infrequency that a person who was denied tenure would seek an adjunct role. Likewise, the fact that other individuals, like Dr. Morgan, initially received adjunct appointments that were later rescinded does not mean that the practice is somehow inapplicable.[2] Finally, the lack of written formalization of the practice does not indicate that it is a ruse, in light of the ample evidence corroborating its existence and its application in several instances. *See, e.g.*, ECF 48-8 at 21-24 (Early Dep.); ECF 48-9 at 19-20 (Gregory Dep.); ECF 48-10 at 8-17 (Williams Dep.); ECF 48-11 at 8-9 (interrogatory responses). Thus, given the lack of temporal proximity and the dearth of evidence suggesting that the cited practice was falsified, summary judgment is warranted because of the absence of a causal link to establish retaliation.

---

[2] In fact, while Dr. Morgan relied heavily on the fact that Dean O'Bryant knew of other individuals who had served as adjunct after denial of tenure, the only individual she was able to cite had served in that role well prior to the three-year old practice. *See* ECF 48-15; ECF 48-14 at 3.

## IV. CONCLUSION

For the reasons set forth above, Dr. Morgan's Motion for Leave to File Third Amended Complaint, ECF 60, will be DENIED and Coppin State's Motion for Summary Judgment, ECF 48, will be GRANTED.  Judgment will be entered in favor of the Defendant. A separate Order follows.


Dated: November 12, 2021                             /s/
                                         Stephanie A. Gallagher
                                         United States District Judge